UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LORI OAKES AND SHELI OAKES<br><br>*Plaintiffs*,<br><br>V.<br><br>KIERRA HENDERSON, individually, AND FRANK E. LIGHTNER, individually, AND FRANK E. LIGHTNER AND KIERRA HENDERSON DBA THE TRUCKING GURU, AND FRANK E. LIGHTNER AND KIERRA HENDERSON DBA AND THE TRUCKING GURU ACADEMY AND AND FRANK E. LIGHTNER AND KIERRA HENDERSON DBA THE TRUCKING GURU UNIVERSITY, AND CAPITOL CHOICE TRUCKING, LLC<br><br>*Defendants*. | Civil Action No.<br><br>_____<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Lori Oakes ("L. Oakes") and Sheli Oakes ("S. Oakes") (collectively, "Plaintiffs") file this Original Complaint for damages against Defendants, Frank. E. Lightner ("Mr. Lightner"), individually; Kierra Henderson ("Ms. Henderson"), individually; and Frank E. Lightner and Kierra Henderson d/b/a The Trucking Guru ("TTG"); and Frank E. Lightner

1

and Kierra Henderson d/b/a The Trucking Guru Academy ("TTG Academy"); and Frank E. Lightner and Kierra Henderson d/b/a The Trucking Guru University ("TTG University"); and Capitol Choice Trucking, LLC ("CCT") (collectively, "Defendants"), respectfully showing the Court as follows:

## PARTIES

1. Plaintiff L. Oakes is an individual and citizen of the State of Maryland.

2. Plaintiff S. Oakes is an individual and citizen of the State of Maryland.

3. On information and belief, Defendant Henderson is an individual currently residing at 3140 Sanctuary Dr. Grand Prairie, TX 75104. Ms. Henderson can also be found at any of the following addresses:

and/or

3140 Sanctuary Dr.
Cedar Hill, TX 75104

and

4144 Office Pkwy, Apt 3101,
Dallas, TX 75204-8801

and

4916 Havenside Way
Mansfield, TX, 76063

She may be served by delivering a copy of the summons and of the complaint with her individually under Rule 4(e)(2)(A) of the FRCP.

4. On information and belief, Defendant Lightner is an individual currently residing at the following address, 312 Martin Luther King Jr Blvd Raleigh, NC 27601. Mr. Lightner is also known to reside at the following addresses from time to time:

3140 Sanctuary Dr.
Grand Prairie, TX 75104

and/or

3140 Sanctuary Dr.
Cedar Hill, TX 75104

and

785 W. Wheatland Rd. #413
Duncanville, TX 75116

He may be served by delivering a copy of the summons and of the complaint with him individually under Rule 4(e)(2)(A) of the FRCP.

5. On information and belief, TTG is a trade name for a partnership owned jointly by Defendants Henderson and Lightner. TTG does business in the state of Texas but is not registered with the State of Texas; thus, TTG may be served with process by serving Defendants Henderson and Lightner in accordance with ¶¶ 4-5 of this Complaint.

6. On information and belief, TTA is a trade name for a partnership owned jointly by Defendants Henderson and Lightner. TTA does business in the state of Texas but is not registered with the State of Texas; thus, TTA may be served with process by serving Defendants Henderson and Lightner in accordance with ¶¶ 4-5 of this Complaint.

7. On information and belief, TTU is a trade name for a partnership owned jointly by Defendants Henderson and Lightner. TTU does business in the state of Texas

but is not registered with the State of Texas; thus, TTU may be served with process by serving Defendants Henderson and Lightner in accordance with ¶¶ 4-5 of this Complaint.

8. Defendant CCT is a limited liability company organized under the laws of North Carolina, with its principal place of business at 312 Martin Luther King, Jr. Blvd., Raleigh, North Carolina 27601. CCT may be served with process through its sole owner and registered agent, Frank Lightner, at 312 Martin Luther King, Jr. Blvd., Raleigh, North Carolina 27601, or wherever else he may be found, by serving a copy of the summons and of the complaint with him individually under Rule 4(e)(2)(A) of the Federal Rule of Civil Procedure ("FRCP").

## JURISDICTION

9. This Court has jurisdiction under 28 U.S.C § 1332(a)(1), as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) because at least Defendants Henderson, TTG, TTGU, and TTGA reside in this judicial district. Venue is also proper in this judicial district because it is the district where a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL BACKGROUND

11. Defendant Lightner and Defendant Henderson, through TTG, TTGU, and TTGA, represent to consumers that they provide an array of services tailored to those

looking to get started in the Logistics and Transportation industry—namely, a Dispatching course, a Mentorship Program, and a "Tribe Plug Access Program" ("TPAP") all designed to assist those interested in purchasing their own commercial trucks and starting profitable transportation companies.

12.     In or around April 2022, Plaintiffs expressed an interest in TPAP, speaking directly with Defendant Henderson about the process. During that discussion, Defendant Henderson recommended to Plaintiffs that they purchase two trucks— namely, the Freightliner 2015 ("Truck 1") and Kenworth 2006 ("Truck 2") (collectively, the "Trucks"). Defendant Henderson further advised that the purchase price for Truck 1 was $68k, and the purchase price for Truck 2 was $30k. At no point during this discussion did Defendant Henderson reveal to Plaintiffs that the trucks were in inoperable conditions or that they needed to undergo inspections. Instead, Defendant Henderson instructed Plaintiffs to contact Defendant Lightner for payment instructions and next steps.

13.     Eager to purchase new trucks for a forthcoming freight company, Plaintiffs promptly contacted Defendant Lightner, who provided Plaintiffs with a link to remit the TPAP fee ($2500 per Truck) and wiring instructions for the purchase price of the Trucks. Plaintiffs remitted the TPAP fee and sent a wire payment to Defendant Lightner and CCT in the amount of $68k for Truck 1. That same day, Defendant Lightner confirmed he received the payment.

14.     The next day, on April 12, 2022, Plaintiffs wired Defendant Lightner the second payment in the amount of $30k for Truck 2. Again, Defendant Lightner confirmed receipt. However, after receiving that payment, he told Plaintiffs that Truck 2 did not pass

inspection. Importantly, at no point leading up to the agreement between the Parties or Plaintiffs performance under the agreement did Defendants inform Plaintiffs that the trucks required additional inspection or that any of the purchased trucks could be inoperable. Instead, Defendant Lightner and Defendant Henderson swiftly presented Plaintiffs with three alternative trucks for purchase, all of which were an additional $40k+ minimum.

15. Upon information and belief, Defendant Lightner and Defendant Henderson knew Truck 2 was inoperable when they recommended to Plaintiffs to purchase it and certainly before Defendants' received a wire payment from Plaintiffs for the truck; that is, if Truck 2 ever existed. Nevertheless, relying on Defendants' material representations regarding Truck 2 and believing that the only remedy was to purchase another one of Defendants' recommended alternative trucks, Plaintiffs selected an alternate truck (the "Western Star Truck") and wired Defendants an additional $46.5k.

16. Not surprisingly, after receiving the additional $46.5k payment from Plaintiffs, Defendants presented Plaintiffs with another purported excuse as to why Plaintiffs would not be receiving a second truck—chiefly, that the Western Star Truck flipped over, was no longer operable, and that they'd replace it with something else. This statement, however, was untrue, as nearly six months later (on October 30, 2022), Defendant Henderson posted a video to her Instagram page of her driving the Western Star Truck purchased by Plaintiffs in April 2022 and captioned said video "Me driving my Western Star loll."

17. Plaintiffs emailed and called Defendant Lightner and Defendant Henderson on multiple occasions regarding the status of their second truck, as well as to request a refund. To date, Defendants have failed and refused to respond to Plaintiffs' requests.

18. As a result of Defendants' conduct, Plaintiffs were forced to retain counsel, who sent Defendants a written demand for a refund on May 8, 2023. Defendants failed and refused to comply with Plaintiffs' final demand for a refund. As such, Plaintiffs hereby sue to recover the damages they sustained because of Defendants' conduct.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS
### COUNT I – BREACH OF CONTRACT

19. The preceding paragraphs are incorporated by reference as if fully set forth herein.

20. Plaintiffs and Defendants entered into a valid contract for the purchase and delivery of two commercial trucks—Truck 1 and Truck 2. Plaintiffs performed their contractual obligations by paying Defendants the TPAP fees (totaling $5k), $68k for Truck 1, and $30k for Truck 2 (never received), and $46.5k for the Western Star Truck (never received).

21. While Plaintiffs have received Truck 1, Defendants have failed to perform its obligations under the agreement—that is, Defendants have failed and refused to deliver a second truck to Plaintiffs despite Plaintiffs' payments for Truck 2 and the Western Star Truck.

22. Defendants' failure to perform their obligations under the agreement has directly and proximately caused injury to Plaintiffs in the amount of $79k, plus attorneys' fees and court costs, for which Plaintiffs hereby sue.

**COUNT II –COMMON LAW FRAUD/FRAUDULENT INDUCEMENT**

23. The preceding paragraphs are incorporated by reference as if fully set forth herein.

24. Defendants made materially false representations to Plaintiffs regarding Truck 2 and the Western Star Truck—namely, that:

- Truck 2 did not pass inspection.
- The Western Star Truck flipped over and was inoperable.

25. Defendants made these statements knowing they were false, reckless, or as positive assertions without knowledge of their truth. At the time the representations were made, Defendants knew either Truck 2 did not exist and/or that Truck 2 was inoperable, and/or Truck 2 was subject to inspection. None of these material facts, however, were disclosed by Defendants to Plaintiffs. Instead, Defendants intended for Plaintiffs to rely on these false representations so that Plaintiffs would remit additional monetary payments to Defendants for additional trucks they had no intentions of selling and/or did not exist.

26. By concealing, omitting, or misstating these facts, Defendants fraudulently induced Plaintiffs into entering into the agreement to purchase Truck 2 and the Western Star Truck. Plaintiffs justifiably relied on Defendants' false representations and continued to perform under the agreement by remitting a total of $79k for two trucks they never received from Defendants.

27. Defendants' false representations directly and proximately caused injury to Plaintiffs resulting in $79kin damages plus legal costs and attorneys' fees. Plaintiffs' injury resulted from Defendants' actual fraud, gross negligence, or malice which entitled Plaintiffs to exemplary damages pursuant to TEX. CIV. PRAC. & REM. Code § 41.003(a).

### COUNT III – NEGLIGENT MISREPRESENTATION

28. The preceding paragraphs are incorporated by reference as if fully set forth herein.

29. Defendants made false representations to Plaintiffs regarding Truck 2 and the Western Star Truck—namely, that:

- Truck 2 did not pass inspection and was inoperable.
- The Western Star Truck flipped over.

30. Defendants made these false representations in the course of business with Plaintiffs in order to induce Plaintiffs to remit additional monetary payments to Defendants. Plaintiffs justifiably relied on Defendants' false representations and continued to perform under the agreement by remitting a total of $79k for two trucks they never received from Defendants.

31. Defendants did not exercise reasonable care or competence in representing to Plaintiffs the existence and/or availability of Truck 2 and the Western Star Truck. Defendants' false representations directly and proximately caused injury to Plaintiffs resulting in $79k in damages plus legal costs and attorneys' fees. Plaintiffs' injury resulted from Defendants' actual fraud, gross negligence, or malice which entitled Plaintiffs to exemplary damages pursuant to TEX. CIV. PRAC. & REM. CODE, § 41.003(a).

## COUNT IV – CONVERSION

32. The preceding paragraphs are incorporated by reference as if fully set forth herein.

33. Plaintiffs are the rightful owners of their right to the monies they have paid to Defendants, $79k in sum. Defendants have no right, title, or interest in Plaintiffs right to these monies due to their fraudulent conduct. Defendants' taking of Plaintiffs' monies constitutes an unlawful, ongoing conversion of Plaintiffs' property. As a result of Defendants' ongoing conversion, Plaintiffs have suffered actual and economic damages in an amount within the jurisdictional limits of this Court. Furthermore, Defendants' ongoing conversion constitutes an act of malice for which Plaintiffs are entitled to recover exemplary damages under Chapter 41 of the Texas Civil Practice and Remedies Code.

## COUNT V – CIVIL THEFT

34. The preceding paragraphs are incorporated by reference as if fully set forth herein.

35. Defendants' conduct violates Chapter 134 of the Texas Theft Liability Act by wrongfully taking and retaining Plaintiffs' property with complete disregard to Plaintiffs' right to the property and with the intent to deprive Plaintiffs of the property.

36. As a result of Defendants' violation of the Texas Theft Liability Act, Plaintiffs suffered actual damages and are entitled to recover these damages, as well as statutory damages under § 134.005(a)(1). Furthermore, Plaintiffs are entitled to recover exemplary damages and all attorneys' fees and costs incurred in seeking possession of their property.

## COUNT VI – UNJUST ENRICHMENT

37. The preceding paragraphs are incorporated by reference as if fully set forth herein.

38. Defendants' fraudulent conduct and unlawful taking of Plaintiffs' money and refusal to return it constitutes unjust enrichment. Defendants have wrongfully obtained benefits at Plaintiffs' expense.

39. Defendants' unjust enrichment at Plaintiffs' expense has been intentional, willful, and malicious. As a result of Defendants' actions, Plaintiffs suffered actual damages and are entitled to recover these damages.

## REQUEST FOR ATTORNEY'S FEES

40. Based on Defendants' breach of contract claim, in addition to its recovery for actual and exemplary damages, Plaintiffs are entitled to reasonable and necessary attorneys' fees incurred in conjunction with its breach of contract claim, both for work at the trial court level and on any appeal, under Texas substantive law, particularly Chapter 38 of the TCPRC.

## CONDITIONS PRECEDENT

41. All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## JURY DEMAND

42. Pursuant to Rule 38(b) of the FRCP, Plaintiffs demand a trial by jury on all issues so triable by right.

# **PRAYER**

WHEREFORE, Plaintiffs pray that summons issue against all Defendants and that the following relief be granted against them:

a.  Actual damages;

b.  Exemplary damages;

c.  Reasonable and necessary attorneys' fees;

d.  Prejudgment and post-judgment interest;

e.  Costs of court; and

f.  Such other and further relief to which Plaintiffs may be justly entitled.

DATED: May 26, 2023

Respectfully submitted,

**WEDLAWK™**

_____
**Emily E. G. Bradford**
Texas Bar No. 24106027
Egb@wedlawk.com

PO Box 84906
Pearland, TX 77584
Telephone: (713) 425-3780
*Attorney for Plaintiffs*